UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARCIA R.,

                Plaintiff,

v.                                                                                          1:20-CV-1236
                                                                                            (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>6000 North Bailey Ave, Ste. 1A<br>Amherst, NY 14226 | KENNETH HILLER, ESQ.<br>SAMANTHA VENTURA, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | KRISTINA COHN, ESQ. |

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      The parties consented, in accordance with a Standing Order, to proceed before the undersigned.  (Dkt. No. 12.)  The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g).  The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the reasons discussed below, Plaintiff's motion is granted to the extent it seeks remand for further proceedings, and the Commissioner's motion is denied.

**I.     RELEVANT BACKGROUND**

    **A.     Factual Background**

Plaintiff was born in 1964. (T. 63.) She completed the 12th grade. (T. 195.) Generally, Plaintiff's alleged disability consists of bipolar disorder, major depression, tremors, thyroid removal, hysterectomy, and gall bladder removal. (T. 63-64.) Her alleged disability onset date is October 1, 2016. (T. 63.) Her date last insured is December 31, 2021. (*Id.*) Her past relevant work consists of retail clerk and housekeeping. (T. 195.)

    **B.     Procedural History**

On January 10, 2017, Plaintiff applied for Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 89.) Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On January 7, 2019, Plaintiff appeared before the ALJ, Roxanne Fuller. (T. 36-62.) On May 24, 2019, ALJ Fuller issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 12-35.) On July 9, 2020, the AC denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

    **C.     The ALJ's Decision**

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 17-29.) First, the ALJ found Plaintiff met the insured status requirements through December 31, 2021 and Plaintiff had not engaged in substantial gainful activity since October 1, 2016. (T. 18.) Second, the ALJ found Plaintiff had the

2

severe impairments of: bipolar disorder; major depressive disorder; generalized anxiety disorder; and cocaine dependence.  (*Id*.)  Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 20.)  Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with additional non-exertional limitations.  (T. 22.)  The ALJ found Plaintiff could have occasional exposure to moving mechanical parts; occasionally operate a motor vehicle; occasional exposure to unprotected heights; and was able to perform routine and repetitive tasks with no interaction with the public and only occasional interaction with co-workers and supervisors.  (*Id*.)  Fifth, the ALJ determined Plaintiff was unable to perform her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 27-28.)

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.     Plaintiff's Arguments

Plaintiff makes two arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues the ALJ improperly evaluated opinion evidence.  (Dkt. No. 10 at 17-20.)  Second, and lastly, Plaintiff argues the ALJ improperly relied on her own lay opinion to craft the RFC.  (*Id*. at 20-23.)  Plaintiff also filed a reply in which she reiterated her original arguments.  (Dkt. No. 13.)

### B.     Defendant's Arguments

In response, Defendant makes one argument.  Defendant argues the ALJ properly evaluated the opinions of record in formulating Plaintiff's RFC.  (Dkt. No. 11 at 4-11.)

## III.   RELEVANT LEGAL STANDARD

### A.   Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

### IV. ANALYSIS

### A. Opinion Evidence

Plaintiff argues the ALJ failed to properly weigh the opinion evidence in the record regarding her mental work-related functional abilities. (Dkt. No. 10 at 17-20.) Plaintiff argues the ALJ improperly relied on a narrow reading of the record to support her weight determinations and opinions provided greater limitations than provided for in the RFC. (*Id*.) Defendant argues the ALJ reasonably accorded little weight to the opinions because the limitations provided were inconsistent with evidence in the record. (Dkt. No. 11 at 4-7.) Neither party disputes the ALJ's physical RFC determination that Plaintiff could perform a full range of work at all exertional levels with additional physical non-exertional limitations; therefore, for ease of discussion and analysis only the relevant evidence will be discussed. For the reasons outlined below, remand is necessary for a proper analysis of the opinion evidence concerning Plaintiff's mental functional limitations and subsequent mental RFC determination.

The record contains two source statements regarding Plaintiff's work related mental functional limitations, one from an examining consultative medical source and one from a non-acceptable treating mental health care provider. In general, the relevant factors considered in determining what weight to afford an opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6)[1].

---

[1] On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844. These final rules were effective as of March 27, 2017. Some of the new final rules state that they apply only to applications/claims filed before March 27, 2017, or only to applications/claims filed on or after March 27, 2017. *See, e.g.*, 20 C.F.R. §§ 404.1527, 416.927 (explaining how an adjudicator considers medical opinions for claims filed before March 27, 2017) and 20 C.F.R. §§ 404.1520c, 416.920c (explaining how an adjudicator considers medical opinions for claims filed on or after March 27, 2017); *see also* Notice of Proposed Rulemaking,

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.  *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e), 416.912(b)(6), 416.913(c), 416.927(e).  "A consultative examiner's opinion may constitute substantial evidence if otherwise supported by the record."  *Grega v. Saul*, 816 F. App'x 580, 582–583 (2d Cir. 2020).  Further, an ALJ may afford more weight to the opinion of a consultative examiner over a treating non-acceptable medical source.  *Monette v. Colvin*, 654 F. App'x 516, 518 (2d Cir. 2016).

A "treating source" is defined as the plaintiff's "own physician, psychologist, or other acceptable medical source who provides [plaintiff], or has provided [plaintiff], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [plaintiff]."  20 C.F.R. §§ 404.1502, 416.902.  There are five categories of "acceptable medical sources."  *Id*. §§ 404.1513(a), 416.913(a).  Licensed mental health counselors are not included within those categories and are therefore considered "other sources," whose opinion may be considered as to the severity of a plaintiff's impairment and ability to work, but their conclusions are not entitled to any special weight.  *Id*. §§ 404.1513(d)(1), 416.913(d)(1).

On April 6, 2017, consultative examiner Janine Ippolito, Psy.D., conducted a psychiatric evaluation and provided a medical source statement.  (T. 526-530.)  Based

---

81 Fed. Reg. 62560, 62578 (Sept. 9, 2016) (summarizing proposed implementation process).  Here, although the agency's final decision was issued after the effective date of the final rules, Plaintiff filed her claim before March 27, 2017. Thus, the 2017 revisions apply to this case, except for those rules that state they apply only to applications/claims filed on or after March 27, 2017.

on her examination, Dr. Ippolito opined Plaintiff had no limitations in her ability to "understand, remember, or apply simple and complex directions and instructions." (T. 529.) She opined Plaintiff could use reason and judgment to make work-related decisions; sustain concertation and perform a task at consistent pace; maintain personal hygiene and appropriate attire, and demonstrate awareness of normal hazards and take appropriate precautions. (*Id.*) Dr. Ippolito opined Plaintiff had "moderate limitations" interacting adequately with supervisors, coworkers, and the public and in her ability to sustain an ordinary routine and regular attendance. (*Id.*) Dr. Ippolito further opined Plaintiff had "moderate to marked" limitations regulating emotions, controlling behavior, and maintaining well-being. (*Id.*)

On December 28, 2018, Erin Marinello, Licensed Mental Health Counselor ("LMHC") completed a form titled "Mental Residual Functional Capacity Questionnaire." (T. 734-738.) She opined Plaintiff was unable to meet competitive standards in: remembering work-like procedures; understanding and remembering very short and simple instructions; carrying out very short and simple instructions; maintaining attention and being punctual within customary tolerances; making simple work-related decisions; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace; asking simple questions; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; responding appropriately to changes in a routine work setting; dealing with normal work stress; and being aware of normal hazards and taking appropriate

precautions.  (T. 736.)[2]  She was unable to meet competitive standards in her ability to do semiskilled and skilled work.  (T. 737.)  She opined Plaintiff was seriously limited in her ability to: interact appropriately with the general public; maintain socially appropriate behavior; and travel in unfamiliar places. (*Id*.)  When asked how many days per month Plaintiff would be absent from work, Ms. Marinello checked "more than four days per month."  (T. 738.)

The ALJ afforded both opinions "little weight."  (T. 26-27.)  In affording the opinions "little weight" the ALJ concluded the limitations provided in the opinions were inconsistent with Plaintiff's function report in which she noted she never lost a job due to problems getting along with others.  (T. 26, 27.)[3]  The ALJ further concluded the limitations provided were not supported by Plaintiff's referral and participation in Acces-VR.  (T. 26, 27.)[4]  Lastly, the ALJ concluded the limitations provided were not supported by treatment records indicating Plaintiff was "ready to transition to lower level of care" and her dosage of antipsychotic medication was lowered.  (T. 26, 27.)  The ALJ concluded such evidence indicated Plaintiff's "mental impairments were stable."  (T. 26, 27.)  The ALJ stated despite the record evidence, she nonetheless limited Plaintiff to routine, repetitive tasks with additional social limitations.  (T. 26, 27.)

---

[2]   The form contained the follow definitions.  "Seriously limited" means "ability to function in this area is seriously limited and would frequently be less than satisfactory in any work setting."  (T. 736.) "Unable to meet competitive standards" means "your patient cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting."  (*Id*.)

[3]   When asked if she had any problems getting along with bosses, teachers, police, landlords or other people in authority, Plaintiff answered "no."  (T. 236.)  When asked if she ever lost a job because of problems getting along with people, Plaintiff answered "no."  (*Id*.)

[4]   Acces-VR is a New York State run vocational rehabilitation program that "assists individuals with disabilities to achieve and maintain employment and to support independent living through training, education, rehabilitation, and career development."  New York State Education Department Adult Career & Continuing Ed Services; http://www.acces.nysed.gov/vr, (last visited June 8, 2021).

Here, the ALJ failed to properly weigh the opinion evidence in the record.  The ALJ's analysis of the opinion evidence frustrates meaningful review and the ALJ relied on a misreading of the evidence in the record to support her weight determination.  Therefore, remand is required for a proper analysis of the opinion evidence in the record and subsequent RFC determination.

The ALJ afforded the entirety of both opinions "little weight" based on the same reasoning; however, the opinions contained widely varying limitations and therefore meaningful review is frustrated.  (T. 26-27.)  To be sure, the ALJ's mental RFC is ultimately consistent with Dr. Ippolito's opinion Plaintiff could perform simple, routine, repetitive work; however, the doctor also opined Plaintiff had "moderate to marked" limitations regulating her emotions, controlling her behavior, and maintaining her well-being.  (T. 529.)  Further, unlike Dr. Ippolito, Ms. Marinello opined Plaintiff was unable to meet competitive standards in most areas of mental functioning; however, consistent with Dr. Ippolito's opinion, she opined Plaintiff was unable to meet competitive standards due to exhibiting behavioral extremes and "seriously limited" in her ability to maintain socially appropriate behavior.  (T. 736-737.)  Because the ALJ afforded little weight to the entirety of both opinions containing vastly differing level of functioning and provided the same reasoning to support her determination, meaningful review is frustrated.

In addition, the ALJ improperly relied on isolated treatment notations and her own interpretation of those notes to support her determination.  To be sure, the ALJ "is not required to discuss in depth every piece of evidence contained in the record, so long [as] the evidence of record permits the Court to glean the rationale of an ALJ's

decision." *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983) (internal quotation marks omitted)).  However, remand may be necessary where an ALJ cites evidence in the record supporting her determination and ignores evidence to the contrary.  *See Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019) ("The ALJ made no attempt to reconcile or grapple with the apparent longitudinal inconsistencies in Estrella's mental health.") (internal citation omitted); *see Morris v. Berryhill*, 313 F. Supp. 3d 435, 440 (W.D.N.Y. 2018) (ALJ impermissibly relied on a "cherry-picked selection of excerpts from the record" in affording medical source less than controlling weight); *see Stacey v. Comm'r of Soc. Sec. Admin.,* No. 19-108, 2020 WL 61986, at *2 (2d Cir. Jan. 7, 2020) ("we have cautioned ALJs against scouring medical notes to draw their own conclusions based on isolated descriptions").

The ALJ's reliance on Plaintiff's referral and participation in Acces-VR is misplaced.  To be sure, treatment notations indicated Plaintiff was "looking for employment."  (T. 744.)  However, looking for employment and working with Acces-VR were listed as "objectives" of treatment and ultimately those objectives were "deferred."  (T. 987.)  Indeed, although Plaintiff "talked about" going to Acces-VR (T. 913) it appears she never followed through (T. 925, 939).  Therefore, although Plaintiff and her counselor discussed finding work and ways to be successful in achieving such goal, there is no indication from the record Plaintiff followed through.

The ALJ also emphasized Ms. Marinello's desire to transition Plaintiff to a lower level of care and lowering her dosage of medication.  (T. 26, 27.)  The ALJ improperly concluded these actions "indicates [Plaintiff's] mental impairments are stable."  (T. 26,

11

27.)  Although Ms. Marinello set an objective to lower Plaintiff's level of care, her level of care was ultimately not lowered because Plaintiff was not ready.  (T. 502, 504, 522.)

The ALJ further misread the record concerning Plaintiff's medication.  Contrary to the ALJ's assertion, Plaintiff's medication was not reduced.  (T. 26.)  In March 2017, Hany Shehata, M.D. noted Plaintiff's prescription of Risperdal 2mg twice a day and 4mg at bedtime.  (T. 642.)  In May 2017, Dr. Shehata noted he planned to lower Risperdal; however, Plaintiff was maintained on 2mg Risperdal twice a day and 4mg Risperdal at bedtime.  (T. 653.)  Notations from August, November, and December 2017 indicated Plaintiff's Risperdal medication was not lowered.  (T. 666, 722, 854.)  In February 2018, Dr. Shehata discussed with Plaintiff lowering her Risperdal from 6mg total daily to 4mg; however, it was ultimately decided to maintain her current dosage.  (T. 893.)  Dr. Shehata stated his goal was to maintain Plaintiff on the minimum effective dosage for "obvious reasons including decreasing the chance of developing Tardive Dyskinesia etc."  (*Id*.)  In May 2018, Dr. Shehata again offered to lower Plaintiff's Risperdal dosage, however, the dosage was ultimately kept the same due to Plaintiff's fear of relapse.  (T. 926.)  Therefore, a lower dose was recommended not due to Plaintiff's improvement in mental health, but due to concerns of side effects.  Although the record indicated goals of lowering Plaintiff's level of care and medication, those goals were never attained.  Therefore, the ALJ erred in discounting the opinions of Dr. Ippolito and Ms. Marinello based on Plaintiff's unattained treatment goals.

Overall, the ALJ failed to properly assess and weigh the opinions in the record concerning Plaintiff's work-related mental abilities.  The ALJ afforded both opinions "little weight" providing, almost word for word, the same analysis to support her

determinations.  The ALJ's blanket weighing of both opinions is not harmless.  Although Dr. Ippolito's opinion ultimately supported the ALJ's determination Plaintiff could essentially perform simple, routine, repetitive work, the ALJ afforded the whole of the doctor's opinion "little weight."  Further, both Dr. Ippolito and Ms. Marinello provided greater limitations in Plaintiff's ability to regulate emotions and behavior than provided for in the RFC.  Without further analysis from the ALJ providing explanation for adopting some limitations and rejecting others, meaningful review is frustrated.  In addition, the ALJ relied on a misreading of the record to support her determination to afford the opinions little weight.

**B. RFC**

In general, the RFC is an assessment of "the most [Plaintiff] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

Due to the errors identified herein in weighing the opinion evidence, the ALJ will also need to make new findings related to Plaintiff's RFC and subsequent steps of the sequential process.  However, Plaintiff's argument that an RFC is a  "medical assessment" and therefore because it is a medical assessment it is error for the ALJ, a lay person, to make a determination without medical reports specifically explaining the scope of Plaintiff's work related capabilities, is misplaced.  (Dkt. No. 8 at 9 citing SSR 83-10, *Johnson v. Colvin*, No 15-CV-649, 2016 WL 4472749, at *5 (W.D.N.Y. Aug. 25, 2016).)

To be sure, SSR 83-10 defines an RFC as "[a] medical assessment of what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his or her medically determinable impairment(s)."

Although the SSR uses the term "medical" in its definition of RFC, the RFC determination is nonetheless reserved to the Commissioner.

As outlined in the regulations:

[w]e use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as [. . .] your residual functional capacity (see §§ 404.1545 and 404.1546), [. . .] the final responsibility for deciding these issues is reserved to the Commissioner.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Therefore, regardless of whether the term medical is used to define the RFC, the final responsibility for deciding a plaintiff's RFC is reserved to the Commissioner, not a medical source.

In addition, an ALJ's factual findings, such as the RFC determination, "shall be conclusive" if supported by "substantial evidence."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153, 203 L. Ed. 2d 504 (2019); 42 U.S.C. § 405(g).  Substantial evidence "means - and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "  *Biestek,* 139 S. Ct. at 1154.

Caselaw from this Circuit further supports the conclusion that an ALJ's RFC determination is not fatally flawed merely because it was formulated absent a medical opinion.  Where the record contains sufficient evidence from which an ALJ can assess a plaintiff's RFC, a medical source statement or formal medical opinion is not necessarily required.  *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017); *see Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (remand not required to obtain a treating source opinion where the record contained sufficient evidence from which the ALJ could assess plaintiff's RFC).

Here, however, remand is necessary because the ALJ erred in weighing the opinion evidence in the record and such error cannot be found harmless.  The RFC determination was not substantially consistent with the opinions of Dr. Ippolito and Ms. Marinello, and the ALJ's reasoning in rejecting some of the limitations and adopting others was not clear from her decision.  *See Damaris G. v. Saul*, No. 20-CV-0725L, 2021 WL 1429530, at *3 (W.D.N.Y. Apr. 15, 2021) (ALJ's reasoning for rejecting some opined limitations and adopting others was not clear from the decision and the error was not harmless because the RFC was not substantially consistent with the opinions).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **GRANTED** to the extent it seeks remand for further proceedings; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated:     June 10, 2021

_____
William B. Mitchell Carter
U.S. Magistrate Judge